PER CURIAM.
The Referee found Respondent guilty of violation of Article XI, Rule 11.02(2) of the Integration Rule, 32 F.S.A., Canons 10 and 11 of the Canons of Professional Ethics, 32 F.S.A. and Rule 1 of the Additional Rules Governing the Conduct of Attorneys in Florida, 32 F.S.A. He recommended Respondent be suspended from the practice of law in Florida for not less than five years. The Board of Governors of The Florida Bar concurred in the Referee’s findings of fact and guilt, but recommended that he be suspended for one year.
The testimony is conflicting and confusing. The questionable behavior arose out of financial . dealings involving Murray Bloom’s hotel, “Green Mansions,” and the adjacent real property. The building and land were encumbered by a first mortgage to American -National Insurance Company in the amount of $200,000, and two other mortgages, one in the amount of $50,000 to Maulé Industries and. another for $25,000 to Golden Isles Mortgage Corporation; the priority of the latter two mortgages is uncertain.
Joel Lewis, the Complainant, was the president and principal stockholder of Golden Isles. Respondent, who had various business interests, borrowed heavily from both Lewis individually and Golden Isles. When Green Mansions became financially troubled, Lewis suggested to Murray Bloom that he hire Respondent to handle bankruptcy proceedings. They were unsuccessful; however Respondent was awarded a $13,800 fee which became a lien on the property.
Maulé then filed to foreclose. Golden Isles hired Respondent to foreclose, and finally American National filed to foreclose its first mortgage. In an attempt to preserve the subordinate liens, Respondent and Maule’s attorneys began negotiations to refinance the first mortgage.
During this time, Respondent organized Parkway Villas, Inc., with himself as president and major stockholder. According to the Certificate of Incorporation, Respondent held 98 of the 100 shares of stock. It was finally decided that Maulé would obtain the first mortgage; before doing so, however, Maule’s attorney drew up a general release between Maulé Industries as the releasee and Golden Isles, Parkway Villas, and Lloyd Bennett as releasors. The general release stated: “It has been *108 agreed by the parties that the negotiations between them are to stop and that any and all agreements between them with respect to said negotiations are to be cancelled and terminated.” Apparently this was executed. Respondent contends this release terminated his legal responsibility to Lewis.
Maulé’s closing was continually postponed and finally, according to Lewis’ testimony, he told Respondent that Golden Isles had the funds to purchase the property and he wished to do so. Instead, Parkway Villas bought Green Mansions for $100, with the understanding that the $209,000 balance due American National would be paid. Parkway was able to obtain a $190,000 first mortgage, but needed $45,000 to complete the sale. Maulé and Parkway advanced $22,500 each; Lewis refused to contribute.
Respondent testified that Lewis knew he had formed Parkway Villas; he also stated that Lewis’ stock participation in any corporation formed to buy Green Mansions was contingent on his contributing money to the purchase price. At the time he bought the hotel Respondent apparently felt that he and Lewis no longer had an attorney-client relationship.
Lewis’ statements, however, indicate that he had a contrary view of their relationship. He stated that he had instructed Respondent to form the new corporation, with Golden Isles as principal stockholder so Golden Isles would not have to sign the mortgage note. He testified that he attempted to find out how negotiations with Maulé were progressing but that Respondent was evasive.
The Referee found that “Respondent failed to keep his client properly advised of the progress of the negotiations and the ultimate arrangements which were perfected.” There is evidence in the transcript supportive of this conclusion, although admittedly the Referee could have reached a contrary conclusion. It also contains evidence that supports the conclusion that, at least in Lewis’ mind, there was still an attorney-client relationship between the two for Lewis apparently was relying on Respondent to protect his interest in Green Mansions.
The findings of the Referee on these conflicting facts are approved by us under the general rule that the determinations of a trier of fact will not be disturbed by the reviewing court unless there is manifest error therein. London Operating Co. v. Continental Const. Co., 118 Fla. 15, 159 So. 33, and Carolina Lumber Co. v. Daniel, Fla.App., 97 So.2d 156.
As before noted, the Board of Governors recommended the Referee’s recommendation of suspension be reduced from five years to one year; we in turn have decided a further reduction is in order. Our reason therefor is that the conflicting evidence leaves some doubt as to the degree of business relationship that existed between Lewis and Respondent as opposed to their attorney-client relationship. Apparently, both relationships existed, leaving some confusion as to the extent of professional responsibility owed by Respondent to Lewis in the transactions related. We do not wish it to be understood that we condemn or penalize Respondent for his omissions respecting Lewis which were not a part of his professional responsibility to him as attorney. Moreover, it is not clear from the record by tangible evidence just what were the financial arrangements and other contractual considerations Lewis extended to Respondent to retain him as his counsel although there was unquestionably some kind of tacitly understood agreement that Respondent represent Lewis in certain facets of the related transactions.[1] With *109 these considerations in mind, we believe it comports with justice due to the uncertainties in this matter to further reduce the suspension recommended.
Accordingly, the Respondent is reprimanded for not keeping Lewis fully advised in particular with respect to the purchase of Green Mansions by Parkway Villas.
It is ordered that Lloyd J. Bennett be suspended from the practice of law in Florida for three months and that he pay the costs of these proceedings in the amount of $1,608.08.
ERVIN, CARLTON, McCAIN and DEKLE, JJ., concur.
ROBERTS, C. J., dissents.

. The Referee himself in his report stated:
“The testimony regarding this litigation [the mortgage foreclosure, etc.] and the refinancing negotiations is so vague and contains so many contradictions that it is virtually impossible to determine exactly what did occur. Apparently, the major portion of the communications between the interested parties were oral as there is little documentary evidence relevant thereto.”