386 So.2d 797 (1980)
THE FLORIDA BAR, Petitioner,
v.
CONSOLIDATED BUSINESS AND LEGAL FORMS, INC., Etc., Respondent.
No. 53702.
Supreme Court of Florida.
June 5, 1980.
Rehearing Denied September 3, 1980.
Ronald R. Richmond, Chairman of the Standing Committee on Unauthorized Practice of Law, New Port Richey, Martin Errol Rice, Bar Counsel, St. Petersburg, and H. Glenn Boggs, Asst. Staff Counsel-UPL, Tallahassee, for The Florida Bar, petitioner.
Stephen D. Hughes, Largo, for respondent.
*798 PER CURIAM.
Petitioner, The Florida Bar, filed a petition in this Court pursuant to article V, section 15, Florida Constitution, charging the respondent corporation, Consolidated Business and Legal Forms, Inc., with engaging in the unauthorized practice of law. We issued an order directing respondent to show cause why it should not be enjoined from the unauthorized practice of law. Subsequently, respondent filed a motion to dismiss which was denied by this Court. Circuit court Judge David F. Patterson, appointed by this Court as referee, conducted hearings in this matter and on June 26, 1979, filed his findings and recommendations with the Court. Because of the comprehensive manner in which the referee dealt with this cause, we set out in full his findings and recommendations:
This is a proceeding conducted pursuant to Integration Rule, Article XVI (III)(A)(4) wherein a final evidentiary hearing was held before the undersigned Referee on May 10, 1979. The question presented is whether or not the respondent is engaged in the unauthorized practice of law and should be enjoined from the continuing of its business as presently constituted. For the reasons stated below this question is answered in the affirmative.
The respondent is a Florida corporation for profit, now known as Consolidated Systems, Incorporated, engaged in the business of offering legal services through members of The Florida Bar who are its full time employees. The officers and stockholders of the respondent are non-lawyers with no legal training who supervise and control the day to day business of the corporation for the sole purpose of personal financial gain derived from providing legal services to individuals who have no other business relationship with the respondent to which such services are related. The practice therefore differs from businesses who maintain lawyers as full time employees primarily to further a course of business other than the practice of law.
Notwithstanding conflicts in the testimony, it is clear that the respondent, through its non lawyer officers, maintains a degree of control over the legal services it furnishes through its lawyer employees for the purpose of maintaining cost efficiency and profit. The manner in which the lawyer employees are compensated encourages the lawyer to conduct a high volume turnover of clients in order to increase his income. The use of standardized forms is encouraged or mandated and the lawyer's time spent in court is organized to limit the time of his absence from the respondent's office where one of the lawyer's primary functions is new client intake. Some of the lawyers employed by the respondent have little or no prior experience in the practice of law and lack sufficient knowledge and experience to render some of the legal services which the respondent offers through media advertising. We find here the unique circumstance wherein the owners of a business are prohibited by law from rendering the services which they offer to the public (F.S. 454.23) are not competent by training to judge the quality of their product, are not subject to the licensing authority which regulates the distribution of their product and who purport to exercise no ultimate control over their primary employees. This concept, alien to the world of business, does greater violence to the accepted ideals of the professions, which must balance service to the public against the need to show a profit. There is no evidence that the respondent has made any attempt to balance the requirements of the Code of Professional Responsibility against its profit motives nor that the owners have the training or ability to make such an evaluation. To the contrary the respondent has established a pattern of conduct in the transferring of pending case files upon the resignation or discharge of an employee lawyer which evinces a disregard for the individual interest of the client. The evidence establishes injury to individual clients by reason of these practices. The petitioner cites many instances of control *799 by lay officers of the corporation to establish that the respondent is engaged in the unauthorized practice of law and this Referee does find that the evidence supports no other conclusion. Assuming that these practices could be corrected by the respondent, would the respondent then be free of the charge of unauthorized practice? It is the finding of this Referee that this question must be answered in the negative. The respondent has shown no other means of producing income other than by the providing of legal services which is clearly the practice of law. Were the respondent to cease the providing of such services, then it would cease to exist as an income producing enterprise. The nature of the corporate business is such that it must be deemed to be engaged in the unauthorized practice of law with or without the examples of lay control which the evidence shows:
In addition to the foregoing the Referee finds:
1. The respondent is organized as a for profit corporation and has filed Articles of Incorporation with the secretary of state's office. The respondent's proper name has been changed, after the initiation of this litigation to CONSOLIDATED SYSTEMS, INCORPORATED.
2. The officers of the corporation are DESMOND JUDGE, President; DANIEL WARD, Vice President and SHEILA HARRIS, Secretary. None of these officers is now, nor has ever been licensed to practice law in Florida. None of them have had any legal training.
3. The respondent maintains offices in several Florida cities, including: Clearwater, St. Petersburg, Tampa, Jacksonville, Holiday, Fort Lauderdale, Altamonte Springs and Sarasota.
4. The respondent employs persons to staff it offices who are licensed to practice law in Florida. Respondent pays these lawyer employees a salary plus a percentage of the gross fees received all fees paid by the clients are paid to the corporate employer. The respondent also employs lay persons to assist its lawyer employees in delivering legal services to the general public.
5. The respondent advertises to the general public that certain specified legal services may be obtained from its offices in exchange for a fee to be paid to the respondent.
6. Services offered by the respondent have included such legal work as: (1) uncontested dissolution of marriage (2) personal bankruptcy (3) change of name (4) simple wills and (5) uncontested adoptions. This list is not intended to be all inclusive and the respondent may provide other legal services in addition to the foregoing.
7. The respondent through its lay employees establishes rules and policies normally reserved to a duly licensed practitioner such as:
a. the establishing of the amount of the fee to be charged for a specific service.
b. the limitation of client conference time per individual case.
c. the requirement that fees and costs be paid in full prior to the rendition of legal services.
d. the promulgating of legal forms to be used as part of the legal services rendered.
8. The respondent's lay officers have access to the files and the work product generated by its lawyer employees on behalf of its customers.
9. The secretaries employed to assist the lawyer employees are employees of the respondent corporation and as such have access to the files and to the work product generated by lawyer employees.
10. The respondent directs and controls the activities of the secretaries of the lawyer employee including directing the secretaries in the procedure to answer telephones and deal with clients.
11. The respondent maintains bank accounts into which it deposits fees paid by clients, as well as escrow monies paid by clients. Both funds are deposited into the company's general account without regard to the escrow status of the funds *800 and at some interval during the week the funds are removed from the general account and deposited into the escrow account. One or more of the lay officers of the respondent have the authority to sign checks drawn on the escrow accounts which contain advance cost deposits paid by customers to be held in trust by the lawyer employees.
12. The respondent company terminates lawyer employees at will without regard to the transfer of files and directs the lawyer employees to sign substitution forms in blank on all files being handled by said lawyer employee, such is done without the consent or knowledge of the clients.
13. Upon the termination of a lawyer employee of the respondent, a new lawyer employee is hired who will take over as many as 100 open files without the consent of the client and without any contact or consultation with the client.
14. That upon the termination of a lawyer employee by the respondent, the respondent refuses to provide the clients the address, telephone number or other location of the lawyer they had previously dealt with.
15. The lay officers of the corporation have exerted a proprietary interest in the clients' case files developed by the respondent's lawyer employees.
16. The profit orientated manner in which the respondent's business is operated by lay officers has resulted in injury or inadequate representation of respondent's clients. Examples are:
a. A Mr. Paul Burgess received inadequate legal representation in a bankruptcy matter by reason of the inexperience of respondent's employee lawyer and was required to incur delay, make numerous court appearances and suffer financial loss by reason of the necessity to engage additional counsel.
b. A Mr. Joe Valley was provided inadequate representation in a dissolution of marriage proceeding by reason of the inadequacy of respondent's form pleadings and/or lack of proper attention to his case by respondent's employee lawyer.
c. A Ms. Lynn Petros was denied adequate relief in the form of a restraining order in a dissolution of marriage proceeding by reason of respondent's monetary policy which prohibits the seeking of relief without prior payment in full.
17. The operation of the respondent's business is inconsistent with intent of the Code of Professional Responsibility, gives rise to an inherent conflict of interest between the legal needs of the client and the monetary policy of the corporation, denies the clients of the respondent access to the Client Security Fund, allows unregulated lay persons access to trust monies and permits unlicensed and unregulated persons to profit from the providing of services which by law they are prohibited from providing.
CONCLUSIONS OF LAW AND RECOMMENDATIONS
The operation of the business of the respondent in the providing of legal services constitutes the unauthorized practice of law and that no modification of procedure by the respondent will allow the respondent to so engage in business lawfully.
It is the recommendation of the undersigned Referee that the respondent be permanently enjoined from the providing of legal services to the public.
Respondent filed exceptions to the foregoing findings and recommendations of the referee on the ground that the findings were not supported by substantial evidence. In a later filed brief, respondent asserts that even if the findings were supported by the evidence it is constitutionally impermissible to enjoin respondent's conduct. Respondent cites as authority for this proposition United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); Brotherhood of Railroad Trainmen v. Virginia ex *801 rel. Virginia State Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); and NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
After carefully reviewing the evidence, we approve and adopt the findings and recommendations of the referee. As we have stated on other occasions, this Court will not reverse the findings of a referee unless the findings are clearly erroneous or wholly lacking in evidentiary support. The Florida Bar, 323 So.2d 257 (Fla. 1975), State ex rel. The Florida Bar v. Bennett, 246 So.2d 107 (Fla. 1971), The Florida Bar v. Wagner, 212 So.2d 770 (Fla. 1968). Respondent has failed totally to demonstrate that the findings of the referee are without support in the record, much less that they are clearly erroneous. The conclusory statements made in the exceptions to the referee's report are not supported by record reference. On the other hand, The Florida Bar directs us to specific pages in the transcript of the testimony which support the referee's findings.
Respondent's assertion that his conduct cannot be constitutionally proscribed is equally without merit. Each of the authorities relied on by respondent is bottomed on associational rights arising out of the first amendment to the United States Constitution. No such rights are involved here.
Synthesized, the report of the referee reflects the inherent danger of the intervention of lay persons or organizations in the attorney-client relationship. The actual practices of the respondent demonstrate vividly the conflict which inheres in such a relationship. The old admonition that "one cannot serve two masters" is borne out by this record. See Garcia v. Texas State Board of Medical Examiners, 384 F. Supp. 434 (W.D.Tex. 1974); The Florida Bar v. Goodrich, 212 So.2d 764 (Fla. 1968); State Bar Ass'n of Connecticut v. Connecticut Bank and Trust Co., 145 Conn. 222, 140 A.2d 863 (1958). Respondent's assertion that the employment contract between the corporate employer and the individual attorney precludes any such intervention or conflict is plainly repudiated by the evidence in this case which demonstrates the actual manner in which the respondent delivers legal services.
Accordingly, the findings and recommendations of the referee are approved and adopted by this Court and the respondent is permanently enjoined from providing legal services to the public.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.
ALDERMAN, J., concurs specially with an opinion.
ALDERMAN, Justice, concurring specially.
I concur that respondent is guilty of unauthorized practice of law and should be permanently enjoined from this unlawful activity. Additionally, I would remand this cause to the referee to consider the Bar's request for assessment of costs and to recommend the amount of costs to be assessed, if any.