OVERTON, Justice.
The Florida Bar’s standing committee on the unlicensed practice of law petitions this Court to approve a proposed opinion finding certain nonlawyer involvement in the area of designing and preparing pension plans and advising clients concerning such plans to be the unlicensed practice of law. Approval of the proposed opinion is sought in accordance with rule 10-7.1 of the Rules Regulating The Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const. Given the state of this record, we disapprove the proposed opinion.
The executive council of the tax section of The Florida Bar initiated this proceeding by requesting that the standing committee on the unlicensed practice of law petition this Court to approve a formal advisory opinion concerning nonlawyer preparation of employee pension plans. The standing committee followed the appropriate procedures as outlined in rule 10-7.1(f) of the Rules Regulating The Florida Bar. It held a public hearing, at which it took testimony, and subsequently voted to issue the proposed formal advisory opinion, which is attached as an appendix.
Currently, the preparation of pension plans is substantially regulated by the Employee Retirement Income Security Act of 1974 (ERISA), codified at 29 U.S.C. §§ 1001-1461 (1988), and nonlawyers, such as certified public accountants, are authorized by federal statutes and regulations to prepare and present such plans for Internal Revenue Service approval. Also, federal statutes and regulations provide that a number of major functions in the operation of pension plans be carried out by nonlaw-yer professionals.
The proposed opinion recognizes that the functioning of pension plans is controlled by ERISA, under which the United States Department of the Treasury and the United States Department of Labor have concurrent jurisdiction. Further, it notes that *432 various provisions of the Internal Revenue Code also apply to the field of pension planning and that the field of pension planning involves the interpretation of the Internal Revenue Code, rulings issued by the Internal Revenue Service, Labor Department pronouncements, statutory law, court decisions, and other regulations having the force and effect of law, as well as the rendering of actuarial, accounting, economic, insurance, and investment advice. The proposed opinion also recognizes that the policy objective of the federal acts is the protection of the rights of employees and their beneficiaries nationally.
The proposed opinion categorizes various functions of pension planning into those which nonlawyers can perform and those which only lawyers may perform. It explains that the following activities, performed by nonlawyers, would not constitute the unauthorized practice of law: (a) promoting, marketing, and selling of a pension plan by motivating an employer; (b) explaining alternatives generally available to the public, such as discussing with an employer the types of plans available and outlining various options; (c) gathering client information, including assembling data on an employer’s work force, the business and financial resources of the employer, and the employer’s objectives, and calculating the costs, liabilities, and requirements associated with various plan options; (d) preparing and filing annual returns and reports necessary for pension plan administration, which are prepared by qualified CPAs and actuaries and are required by the provisions of ERISA; and (e) administering the plan, including the management and supervision of the day-to-day operation of the plan.
On the other hand, the following activities would be prohibited and would constitute the unlicensed practice of law: (a) analyzing the client information collected and making a determination concerning what particular plan would be best for the client; (b) drafting of plan documents; (c) qualifying the plan before the Internal Revenue Service; and (d) terminating a pension plan, including preparing corporate resolutions and applying to the Internal Revenue Service for a termination letter. The proposed opinion also provides that the nonlawyer professional may not select the attorney for the employer and that an attorney-employee of a nonlawyer company engaged in the business of pension plans may not draft a plan or select plan options for a customer of the company.
The executive council of the tax section óf The Florida Bar argues that the advisory opinion is in the public interest and that the opinion strikes a reasonable balance in allowing qualified nonlawyers to participate in pension matters within their areas of expertise while directing that only licensed attorneys may draft critical documents and provide legal advice and services. The tax section acknowledges that Congress’s intent in enacting ERISA was, in part, to limit the threat of inconsistent state and local regulation of employee benefit plans and, in particular, to protect employee beneficiaries of such plans.
Numerous nonlawyer professional organizations have filed responses in opposition to the adoption of this proposed opinion. Clearly, CPAs, actuaries, and insurance underwriters would be substantially affected were we to adopt the proposed opinion.
The certified public accountants assert that federal statutes and regulations permit CPA practice in the five disputed practice areas, which they characterize as (1) selection, (2) drafting, (3) qualification, (4) termination, and (5) general tax advice. They further argue that ERISA and its implementing regulations permit nonlaw-yer practice in the prohibited areas and, consequently, that the proposed opinion would be state regulation that is preempted by the federal act. They rely on the United States Supreme Court’s decision in Sperry v. State ex rel. The Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), arguing that it holds that states do not have the power to place limitations on the authority granted to a nonlawyer by a federal agency. They assert that Sperry clearly controls because 5 U.S.C. § 500 (1988) and the Treasury Department regulations in 31 C.F.R. § 10.3(b) (1989) expressly authorize CPAs to practice before *433 the Internal Revenue Service. Other non-lawyer professionals make similar arguments.
It is apparent that pension plan preparation and administration is a field of practice that requires the knowledge and expertise of lawyers, CPAs, actuaries, and life insurance professionals. Further, the federal government, through acts of Congress, particularly ERISA and provisions of the Internal Revenue Code, as well as through regulations implementing congressional acts, clearly intends to protect pension plan beneficiaries. These federal statutes and regulations expressly allow nonlawyers to practice before federal agencies. For instance, 31 C.F.R. § 10.3(b) (1989), concerning practice before the IRS, states, in pertinent part:
Any certified public accountant who is not currently under suspension or disbarment from practice before the Internal Revenue Service may practice before the Service upon filing with the Service a written declaration that he is currently qualified as a certified public accountant and is authorized to represent the particular party on whose behalf he acts.
“Practice,” as defined by the regulations, includes
all matters connected with presentation to the Internal Revenue Service or any of its officers or employees relating to a client’s rights, privileges, or liabilities under laws or regulations administered by the Internal Revenue Service. Such presentations include the preparation and filing of necessary documents, correspondence with and communications to the Internal Revenue Service, and the representation of the client at conferences, hearings, and meetings.
31 C.F.R. § 10.2(a) (1989) (emphasis added). In addition, provisions of ERISA expressly require participation by a certified public accountant or an enrolled actuary where certain parts of the pension plan process are concerned. See 29 U.S.C. § 1023 (1988). We have recognized that state administrative agencies have the authority to permit nonlawyers to practice before them, The Florida Bar v. Moses, 380 So.2d 412 (Fla.1980), and we acknowledge the authority of federal agencies to do likewise.
We realize that pension planning is a highly specialized area of practice, in which several professional disciplines overlap. We agree with our sister court in New Jersey, which reasoned that “in cases involving an overlap of professional disciplines we must try to avoid arbitrary classifications and focus instead on the public’s realistic need for protection and regulation.” Application of N.J. Soc’y of Certified Pub. Accountants, 102 N.J. 231, 237, 507 A.2d 711, 714 (1986).
With regard to the matter before us, we find that our authority is restricted because much of the practice in this field of law is before administrative agencies, and we are not convinced by this record that there exists a public need for the protection sought in this proposed opinion. Consequently, at this time, we find that we should disapprove the proposed opinion. In doing so, we are mindful of our decision in The Florida Bar re Turner, 355 So.2d 766 (Fla.1978), but we note that it was based solely on a stipulated record and upon facts which occurred prior to the federal government’s entry into the field of pension planning. As the standing committee recognized, neither Turner nor the proposed opinion was intended to overrule any federal regulation authorizing nonlawyer professionals to practice before federal agencies. Clearly, we cannot prohibit authorized professionals from preparing and presenting the necessary documents to federal agencies before which they are admitted to practice.
While we decline to approve the proposed opinion under present circumstances, we reject the claims by the nonlawyer professionals that such an opinion would constitute an antitrust violation or would violate their first amendment commercial speech rights. We simply find that this record does not justify our approving a definitive opinion concerning this subject at this time. Accordingly, we deny the petition.
It is so ordered.
*434 SHAW, C.J., and McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
APPENDIX
INTRODUCTION
This is a proposed advisory opinion pursuant to Chapter 10 of the Rules Regulating The Florida Bar. Petitioner, the Executive Council of the Tax Section of The Florida Bar, has requested a formal advisory opinion on the following question:
Whether it is the unlicensed practice of law for a nonlawyer to render advice as to the design of a pension plan and/or draft or amend a pension plan for another.
Pursuant to Rule 10-7.1(f) of the Rules Governing The Investigation And Prosecution Of The Unlicensed Practice of Law, public notice of the date, time, and place of the meeting, the question presented, and an invitation to provide written comments was published in The Florida Bar News and The Tallahassee Democrat on December 1 and 15, 1988, and December 11 and 12, 1988, respectively.
The Standing Committee on Unlicensed Practice of Law (hereinafter “the Standing Committee”) held a public hearing on January 12, 1989. Petitioner was represented by Edward Heilbronner, a member of the Tax Section Executive Council. In addition to Petitioner, the Standing Committee received oral testimony from Mr. Heilbronner in an individual capacity; James McNabb, an attorney representing Pension Investors Corp.; Daniel Schramek, spokesman for HALT; John P. Stilwell and James K. McGann, representing the National Association of Life Underwriters and the Florida Association of Life Underwriters; Stratton Smith, an attorney representing Southeastern Actuarial Associates; John Popson; Kenneth Inghan, president and chief executive officer of Wolper, Ross, Ingham & Co.; Alton Ward, an attorney with Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O’Neill, representing the firm; Sharon Quinn Dixon, an attorney with Sterns, Weaver & Miller, representing herself and the firm; Robert Freidman, an attorney representing Pension Investors Corp.; and Don Jaret, an attorney representing himself.
In addition to those testifying, the hearing was attended by approximately thirty other interested parties. Due to the number of interested parties, the record was left open until January 31, 1989, for the submission of written testimony. The record was opened again from March 1, 1989 through March 21, 1989, for the receipt of further written testimony. The transcript of the hearing and the written testimony are included in the record.
In order to fully analyze the question presented and to consider all of the testimony, the Standing Committee deferred any action on the request to its April 21, 1989 meeting. At that time, the Standing Committee voted to issue the proposed advisory opinion that follows. Abstaining from voting on the issue pursuant to Rule 10-7.1(e) were Standing Committee members Gregory G. Keane, William D. Mitchell and James E. McDonald.[1] Assisting the Standing Committee as voluntary counsel pursuant to Rule 10-7.1(d) is Robert W. Mead, Jr.
GENERAL DISCUSSION OF THE LAW GOVERNING PENSION PLANS
The pension plan area is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (hereinafter “ERISA”)- — under which the Treasury Department and the Department of Labor have concurrent jurisdiction-and various provisions of the Internal Revenue Code (hereinafter the “Code”).[2] The field of pension planning involves the interpreta *435 tion of the Code, Revenue Rulings issued by the Internal Revenue Service, Labor Department pronouncements, statutory law, court decisions and other regulations having the force and effect of law, as well as the rendering of actuarial, accounting, economic, insurance and investment advice. The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978). The primary policy objective of ERISA is to protect the rights of employees and their beneficiaries. (ERISA, Section 2). The employer also benefits by receiving favorable tax treatment on contributions made to its pension plan. For a general discussion of ERISA, see Bloss, ERISA: An Overview for Non-ERISA Attorneys, 75 A.B.A.J. 72 (May 1989).
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The question of whether a nonlawyer engages in the unlicensed practice of law when he drafts a pension plan was addressed by the Florida Supreme Court in The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978). In Turner, discussed more fully below, the Court held that some activities connected with the drafting of a pension plan were the unlicensed practice of law' while other activities could be performed by a nonlawyer. The oral and written testimony received by the Standing Committee showed a great deal of confusion on the part of attorneys and laymen as to the exact boundaries of Turner. While attorneys tended to construe Turner in a restrictive manner, the certified public accountants, life insurance underwriters, enrolled actuaries and pension consultants practicing in this area read Turner more broadly. This confusion was one reason for the Standing Committee’s decision to issue an opinion. Another reason was a finding of public harm.
Although the Standing Committee did not receive a great deal of testimony on the issue of public harm from the lay witnesses, the attorneys did relate numerous instances where harm resulted to an employer or employee from the drafting of a pension plan by or pension advice received from a nonlawyer. One concern of the Standing Committee is that the nonlawyer practicing in this area is often motivated by the sale of a product or service other than the plan itself. For example, the life insurance underwriter or stock broker is primarily interested in selling securities or life insurance as an investment in the plan. The element that is absent from this type of transaction, as opposed to a situation where an attorney is rendering the service, is the independent professional judgment the attorney is required to provide by the Rules of Professional Conduct as part of the attorney-client relationship.
Another concern of the Standing Committee, as brought out by the testimony, is the nonlawyer’s failure to consider the effect of the pension plan on other areas of the law or the employer’s business. For example, the nonlawyer often lacks the expertise to consider the interplay between the tax consequences arising from the pension plan and other tax ramifications such as estate tax or probate planning. If these areas are not taken into account the client is not properly served and the likelihood of public harm is substantial.
Although there are certain areas in which the nonlawyer lacks the training or background to properly advise on other aspects of the employer’s needs, there are areas in the pension field where nonlaw-yers perform a valuable service. The witnesses agreed that the client is best served if the attorney and layman work together to formulate and implement a pension plan. Just as the attorney practicing in the pension area has expertise in the law, the nonlawyer working-in this field has his own area of expertise. The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978), recognized this fact.
Turner was a life insurance agent who set up corporations and drafted pension and profit sharing plans for physicians. Several doctors eventually sought legal counsel after Turner misused funds in a trust he had established. The attorneys *436 filed an unlicensed practice of law complaint with The Florida Bar. After a Petition Against The Unauthorized Practice Of Law was filed, Turner and The Florida Bar entered into a stipulation containing conclusions of fact and law. The stipulation was accepted by the Supreme Court of Florida and incorporated into its opinion.
As stated previously, the Turner case set forth areas that are authorized practice for a nonlawyer and areas that constitute the unlicensed practice of law. Those activities which are authorized are:
(1) the rendering of actuarial, accounting, economic, insurance and investment advice in reference to the designing, drafting and adoption of a pension plan without the rendering of legal advice;
(2) a general discussion with an employer of various types of pension plans, which employees should be covered as a matter of policy, the cost of the benefits for employees, the amounts of contributions to the plan, the method of funding the plan and other factors of a strictly financial and economic nature; and
(3) a general discussion with another person of general principles of law. 355 So.2d at 769.
Those activities which constitute the unlicensed practice of law are:
(1) the supplying of legal forms to others coupled with instructions or advice and/or representations as to how the forms should be filled out or the quality and effect of such forms as applied to the specific situations of others;
(2) making changes in legal forms to fit a particular set of facts or meet the specific needs of others;
(3) the design and preparation of a pension plan for another embodying data gathered from that person;
(4) the submission of a pension plan to another for adoption and/or implementation coupled with the representation, either directly or indirectly, that the plan is suitable to the person's particular circumstances, needs and objectives;
(5) advising another that a particular pension plan qualifies for tax benefits under the Code, revenue rulings and court decisions;
(6) rendering an opinion or giving advice, either directly or indirectly, regarding the consequences or effects of the tax laws or other laws on a pension plan;
(7) the interpretation of provisions of a pension plan; and
(8) the preparation of the legal documents that comprise or accompany a pension plan.
355 So.2d at 769-770.
The facts which formed the basis of the Turner opinion occurred in 1973 — prior to the passage of ERISA. Petitioner testified that although Turner is still an accurate statement of the law, it should be revisited and modified in light of the numerous administrative requirements added to the pension plan by ERISA. The Standing Committee agrees that current guidelines are needed and that the public interest will best be served if conscientious nonlawyers working in the employee benefits field are given standards by which they can confidently conduct their businesses without undue concern over the unlicensed practice of law.
The process of implementing a pension plan can be broken down into eight steps:
(1) promoting, marketing and selling the plan;
(2) explaining alternatives generally available to the public;
(3) gathering information from the client;
(4) analyzing client information, deciding on the type of plan and selecting various optional plan provisions;
(5) drafting the plan documents;
(6) obtaining governmental qualification of the plan;
(7) administering the plan and dealing with government regulators; and
(8) termination of the plan.
*437 In order to answer the question presented, each step will be analyzed in light of Turner, as impacted by ERISA, taking into account the definition of the practice of law developed in The Florida Bar v. Sperry, 140 So.2d 587 (Fla.1962), rev’d on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).[3]

Promoting, Marketing and Selling the Plan

Motivating an employer to implement a pension plan does not involve the practice of law. Therefore, the nonlawyer may advertise, meet with the employer, review different products which may be used as investments in the plan and engage in a general motivational discussion to familiarize the employer with pension plans generally, to the extent permitted by other laws and ethical standards of the nonlawyer’s profession.[4]
However, the nonlawyer may not hold himself out as an attorney or as able to provide any of the services which constitute the unlicensed practice of law. The Florida Bar v. Lerner, 485 So.2d 826 (Fla.1986); The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978). If the nonlawyer is a company with a Florida Bar member on staff, the company may not advertise that it has certain legal expertise; to do so would mislead the public into believing that the company could perform legal services for others. The Florida Bar v. Consolidated Business and Legal Forms, 386 So.2d 797 (Fla.1980).

Explaining Alternatives Generally Available to the Public

A discussion with the employer of the types of plans available and outlining various options does not constitute the unlicensed practice of law. In re: Raymond, James & Assoc., Inc., 215 So.2d 613 (Fla.1968); The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978). Therefore, the non-lawyer may conduct a general review of different types of pension plans, “which employees should be covered as a matter of policy, the cost of the benefits for employees, the amounts of contributions to the plan, the funding of the plan,” and general principles of law. 355 So.2d at 769. However, the discussion may only be used to familiarize the employer with his options and may not involve specific legal advice concerning particular plans or their suitability to the employer or eligibility under the tax laws. Id.
One option which the nonlawyer may discuss with the employer is the use of a master or prototype plan. A master or prototype plan is a standardized document which has usually received an opinion letter from the Internal Revenue Service stating that the plan is generally qualified for tax purposes. In implementing the plan, the employer must select certain options for its operation — such as eligibility, contribution levels and vesting schedules — usually by the completion and execution of an “adoption agreement.” Although the nonlawyer may explain the workings of a master or prototype plan as an alternative for the employer and inform the employer that the plan may generally qualify under the Internal Revenue Code, the nonlawyer may not state that the plan is suitable for the employer’s particular needs, give advice as to the specific consequences of the tax laws or other laws as they relate to the employer’s situation, or render an opinion that the *438 particular plan once adopted by the employer will qualify for tax benefits or be in compliance with ERISA or the Code. Id. at 770. In other words, the nonlawyer may market the plan and suggest its adoption but may not represent that the plan is suitable, with specific options selected, for the employer’s particular needs. In this regard, the nonlawyer may not hold himself out as being able to advise the employer on which options to select and should inform the employer that he needs to seek the services of an attorney of his choice in order to make the plan fully operational.

Gathering Client Information

Gathering client information involves assembling data on the employer’s work force, the business and financial resources of the employer and the employer’s objectives, and calculating the costs, liabilities and requirements associated with various plan options. Gathering client information also includes recommendations concerning the basic economic structure of the plan. This process does not constitute the unlicensed practice of law. In re: Raymond, James & Assoc., Inc., 215 So.2d 613 (Fla.1968). However, the nonlawyer may not render an opinion as to the legal sufficiency of any plan or trust that the employer may currently be using and may not advise as to the corporate documents necessary to install or amend a plan. In re: Raymond, James & Assoc., Inc., 215 So.2d 613 (Fla.1968); Turner, 355 So.2d 766; The Florida Bar v. Town, 174 So.2d 395 (Fla.1965).

Analyzing Client Information, Deciding on the Type of Plan, Selecting the Plan Provisions

Once the nonlawyer has motivated the employer and gathered the client information, an attorney of the employer’s choosing must become involved in the process. During this phase, the information gathered from the employer is applied to a particular type of plan and to specific plan provisions. Analyzing the information and making a determination as to what plan would be best for the client affects important legal rights of the employer and employees and involves an analysis of legal principles and a skill and knowledge of the law greater than that possessed by the average citizen. This step in the process therefore constitutes the practice of law. The Florida Bar v. Sperry, 140 So.2d 587, 591 (Fla.1962), rev’d on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).
It is also at this stage that the attorney’s ability to consider the other aspects of the employer’s needs comes into play. The attorney reviews and analyzes the information gathered by the nonlawyer in order to determine a course of action that will best achieve the long term objectives of the employer. If more information is needed, the attorney contacts his client, the employer, and may consult with the nonlawyer and use the nonlawyer’s knowledge as an aid in developing the plan. Although the nonlawyer may make suggestions to the attorney, the final decision is that of the employer upon the advice of the attorney.
Again, if the employer has decided to adopt a master or prototype plan, the non-lawyer may not advise the employer as to which plan options would be best for the employer’s needs. This determination requires the input of a qualified attorney and should be made by the employer with the counsel of the attorney. Turner, 355 So.2d 766.

Drafting Plan Documents

The drafting of the plan documents clearly constitutes the practice of law. The Florida Bar v. Turner, 355 So.2d 766 (Fla.1978). Therefore, a nonlawyer engages in the unlicensed practice of law when he prepares or amends a pension plan or drafts corporate documents and resolutions, trust documents, contracts and any other materials that comprise a plan or are required for its installation. Turner, 355 So.2d 766; Town, 174 So.2d 395.
Although Turner is unambiguous on this point, the Standing Committee is of the opinion that the specific documents that *439 require preparation by an attorney require clarification in light of the significant increase in paperwork mandated by ERISA, which became effective after the filing of the complaint leading to the Turner opinion. The list of items is not all inclusive, as there may be some pension plans that require specialized materials. In those cases, it is safe to assume that the documents should be prepared by an attorney, as they affect important legal rights of the employer and employees and require that the person drafting them and providing the advice possess legal skill and a knowledge of the law greater than that of the average citizen. The Florida Bar v. Sperry, 140 So.2d 587 (Fla.1962).
In addition to the documents discussed in Turner, ERISA now requires that the administrator of the plan furnish a summary plan description to all participants and their beneficiaries and file a copy with the Secretary of Labor. (ERISA, Section 104). The failure to carry out this communication in a timely manner is a breach of the employer’s fiduciary duty and could result in liability on the part of the employer, as well as harm to the employee. Genter v. Acme Scale & Supply Co., 776 F.2d 1180 (3d Cir.1985). Therefore, the summary plan description must be prepared by an attorney selected by the employer.
ERISA also requires the filing of annual returns or reports with the Secretary of Labor and the Internal Revenue Service and the furnishing of copies of summaries of those reports to participants and beneficiaries. (ERISA, Section 104). These reporting requirements bring into question the issue of preemption discussed in The Florida Bar v. Sperry, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). There, the United States Supreme Court held that Florida could not enjoin an activity as the unlicensed practice of law if there existed a specific federal rule or regulation that allowed a nonlawyer to engage in the activity. In this regard, Section 103 of ERISA requires that certain aspects of these documents be handled by a qualified public accountant and an enrolled actuary. Therefore, the annual reports and summary annual reports may be completed by a nonlawyer. Moreover, 26 U.S.C. § 7701(a)(36) and 31 C.F.R. § 10.7 allow a nonlawyer to prepare tax returns. Therefore, the returns required by the Internal Revenue Service may be completed and filed by a nonlawyer. These returns include the annual return (26 U.S.C. § 6058(a)), the periodic report of the actuary (26 U.S.C. § 6058(b)) and the annual registration (26 U.S.C. § 6057), all of which are filed on Internal Revenue Service forms and require the signature of the plan administrator or plan sponsor.
ERISA requires that the employee receive reports (upon request and no more frequent then annually) of their total accrued and nonforfeitable benefits. The Retirement Equity Act of 1984 prescribes certain forms to be used when a distribution is made from a pension plan, including, but not limited to, a description of the joint and survivor and pre-retirement survivor forms of benefit and alternative methods of distribution, which in turn require certain elections, waivers and spousal consents. These forms are inherent in the administration of a plan and are typically prepared by the nonlawyers who file the annual reports. Accordingly, the drafting of the forms necessary for plan administration does not constitute the practice of law.
Included in the documents which must be completed by an attorney is the adoption agreement or joinder agreement used to install a master or prototype plan. Although a master or prototype plan is a standardized document, it falls within the Sperry definition and the requirements of Turner. Therefore, although a nonlawyer may market and sell a master or prototype plan, as previously noted, the nonlawyer may not complete the document implementing it. In addition, he should not lead the employer to believe that he can accept his advice as a substitute for the independent professional judgment of his attorney.
In a situation where the nonlawyer is a company with a Florida Bar member on its staff, the attorney-employee may draft the master or prototype plan for the company. *440 The company may in turn sell the plan to the employer in the same fashion as the sale of a “kit.” The Florida Bar v. Brumbaugh, 355 So.2d 1186 (Fla.1978). Under no circumstances, however, may the non-lawyer represent that the plan is suitable in all respects for the employer’s business or select options for the employer because such action constitutes the unlicensed practice of law. Turner, 355 So.2d 766; Brumbaugh, 355 So.2d 1186. Nor may the non-lawyer company hold itself out as possessing legal expertise. The Florida Bar v. Consolidated Business and Legal Forms, 386 So.2d 797 (Fla.1980). Therefore, once the nonlawyer has sold the master or prototype plan, he should advise the employer to consult an attorney of his choosing to review the plan and advise the employer on which options would be best suited to his needs.
Distinguished from the situation where the attorney-employee drafts a master or prototype plan for the nonlawyer company is that where the attorney-employee drafts an individually designed plan or selects the options of a plan for the nonlawyer company to sell to the employer. This practice constitutes the unlicensed practice of law, as the nonlawyer is drafting the plan, advising that it is suitable for the employer’s needs and, at least implicitly, leading the employer to believe that the plan qualifies for beneficial tax treatment and complies with ERISA. Turner, 355 So.2d 766. Moreover, the employer is then relying on the nonlawyer to properly prepare the pension plan, including the various options structured to meet his particular objectives. “The tendency of persons seeking legal assistance to place their trust in the individual purporting to have expertise in the area necessitates [the] regulation of such attorney-client relationships_” Brumbaugh, 355 So.2d at 1193. To the extent that the nonlawyer operates in such a manner to cause this reliance, the nonlawyer is engaging in the unlicensed practice of law. Id. at 1193-1194. As the attorney-employee may only perform legal services for the company and not for the customers of the company, such nonlawyers may not hire staff counsel to draft pension plans for their customers.[5]
Moreover, the nonlawyer may not select the attorney for the employer.[6] The requirement that the attorney be of the employer’s choosing is essential to the maintenance of the attorney-client relationship and the exercise of the necessary independent professional judgment by the attorney. The Standing Committee heard testimony of instances where a nonlawyer drafted the plan or picked the plan options and then had the plan reviewed by an attorney selected by him in an attempt to “cleanse” the plan from the unlicensed practice of law. Such action, however, remains the unlicensed practice of law if the plan was drafted by a nonlawyer; a cursory review by an attorney is not sufficient supervision to render the document one drafted by the attorney. Rules 4-5.3, 4-5.-5, Rules Regulating The Florida Bar. The same holds true where the nonlawyer drafts the plan or selects the options for the employer but informs the employer that he should have it reviewed by his attorney. Again, it is the nonlawyer who is making the decisions as to what should be included in the plan and drafting the plan document. Sperry, 140 So.2d 587; Turner, 355 So.2d 766.
To summarize, a nonlawyer engages in the unlicensed practice of law when he drafts a pension plan, amendments to the plan, corporate documents adopting the plan or amendments, the summary plan description, trust agreements used to fund the plan, and other documents that make up a plan. The nonlawyer may complete *441 the annual returns/reports, the summary annual reports, the elections, consents and waivers used in administration of the plan, and other documents which the federal rules or regulations specifically state may be completed by a nonlawyer. An attorney-employee of a nonlawyer company engaging in business in this field may draft a master or prototype plan for his employer only. Neither the attorney-employee nor the nonlawyer company may draft a plan or select plan options specifically for the customer of the company. Although the attorney may contact a nonlawyer and request assistance in drafting the plan documents, the nonlawyer may not select the attorney for the employer, as the attorney must be independent counsel of the employer’s choosing.
Any other documents required by the particular employer or plan or mandated by ERISA or the Code should be analyzed in light of the principles discussed above.

Qualification of the Plan

The sponsor of a pension plan may seek a predetermination from the Internal Revenue Service as to whether the pension plan will be treated as qualified for tax purposes. 29 U.S.C. §§ 1201-1204; 26 U.S.C. § 1, et seq. The initial qualification and continuing qualification of a pension plan call for an in-depth knowledge of the plan and the tax laws. Therefore, obtaining and maintaining such qualification requires legal skill and a knowledge of the law greater than that possessed by the average citizen. If the submittal to the Internal Revenue Service is not done properly, the employer could lose a valuable aid in determining how to proceed with his pension plan and may even have a plan that is initially qualified subsequently held to be disqualified. Therefore, the providing of this service affects important legal rights of the employer. As such, it constitutes the practice of law and must be handled or supervised by an attorney. Sperry, 140 So.2d 587. The portions of the plan submission which deal with employee, data and financial information may be completed by a nonlawyer. Moreover, a nonlawyer specifically authorized by a federal rule or regulation to present a plan to the Internal Revenue Service for qualification may handle the qualification of the plan. The Florida Bar v. Sperry, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).
As to master and prototype plans, the attorney-employee of a nonlawyer company may apply for and obtain an opinion letter on the master or prototype plan for the nonlawyer company. The attorney-employee may not, however, apply for a determination letter on a nonstandardized plan (which should have its own determination letter issued to the adopting employer) on behalf of the customer of the nonlawyer company.

Administering the Plan and Dealing With Regulators

Administering the plan involves the management and supervision of the day-today operation of the plan, including the allocation of contributions and earnings and keeping track of new and terminated participants, in addition to filing annual returns/reports and preparing summary annual reports. Dealing with regulators involves the completion of the various reports required by the Secretary of Labor and the Internal Revenue Service, as discussed above. This plan administration may be handled by a nonlawyer and does not constitute the practice of law. However, if questions or situations arise concerning the plan that require legal advice, the nonlawyer should inform the employer to seek the assistance of legal counsel.

Termination of the Plan

The termination of a pension plan, like its installation, involves serious legal consequences for the employer and employees. Accordingly, the preparation of the corporate resolutions (and plan amendments, if necessary)'required to terminate and the application to the Internal Revenue Service for a determination letter on the termination (which, though not required, is *442 usually desirable) constitutes the practice of law and requires the supervision of an attorney. However, the completion of the various forms to be filed with the Internal Revenue Service (the final return for the plan and the application materials for the determination request, as well as materials to be submitted to the Pension Benefit Guaranty Corporation, if applicable) calls for information normally furnished by the nonlawyer handling the plan administration and thus typically involves nonlawyer participation. The termination of a plan generally results in the full vesting of benefits and necessitates the rendering of advice to the employer concerning the interpretation of complex statutory provisions under the Code governing the taxation of distributions, the possibility of tax-free rollover to an individual retirement account, the transfer to another qualified plan and other matters, all of which have serious implications to the participants and beneficiaries receiving the funds from the plan. However, again, nonlawyer involvement is essential since the preparation of the various administrative forms such as elections, waivers and consents, which typically must be completed and executed in connection with the payout of benefits from the plan, is a function of plan administration and is handled in most instances by the consultant in charge of the administration. Nevertheless, the overall plan termination process should be coordinated with and supervised by the employer’s legal counsel.
CONCLUSION
The question presented must be answered in the affirmative, as it describes activity that is clearly the unlicensed practice of law. More importantly, this opinion attempts to set forth standards to guide non-lawyers working in .the pension area as to the unlicensed practice of law. Although all the documents that may Comprise a pension plan are not specifically discussed, the principles reviewed herein may be applied to other documents and issues that arise relative to a particular plan. The Standing Committee wishes to stress, however, that nothing in this opinion should be read to prohibit a nonlawyer from practicing his profession or engaging in activities which federal rules or regulations specifically state may be conducted by a nonlaw-yer, nor to allow an attorney to engage in a profession in which he is not licensed. The majority of the witnesses at the hearing and through the written testimony emphasized the importance of the role nonlawyers play in this area. The general consensus is that the client is best served if the attorney and the nonlawyer work together to formulate, implement, qualify and maintain a pension plan which suits the employer’s needs.
Respectfully submitted,
/s/ Joseph R. Boyd Joseph R. Boyd, Chairman Standing Committee on UPL 2241 Monticello Drive Tallahassee, Florida 32303 (904) 386-2171 FI. Bar # 179079
Mary Ellen Bateman, UPL Counsel The Florida Bar 650 Apalachee Parkway Tallahassee, Florida 32399-2300 (904) 561-5600 FI. Bar # 324698
Lori S. Holcomb, Assistant UPL Counsel The Florida Bar 650 Apalachee Parkway Tallahassee, Florida 32399-2300 (904) 561-5600 FI. Bar. # 501018

. Pursuant to Rule 10-7.1(e), all potential conflicts of interest were disclosed at the hearing and are part of the record. Standing Committee member Robert M. Sondak was not present at the hearing although he did attend the April 21, 1989 meeting. At that time he disclosed the fact that Edward Heilbronner is a partner in his law firm as a potential conflict. The Standing Committee decided that Mr. Sondak's participation was not improper.

. As used in this opinion, the term "pension plan” means all qualified retirement plans, in- *435 eluding, but not limited to, pension plans, profit sharing plans, target benefit plans, cash or deferred plans and employee stock ownership plans.

. The test formulated in The Florida Bar v. Sperry, 140 So.2d 587 (Fla.1962), rev’d on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), is as follows: (1) whether the giving of the advice and the performance of the services affect important rights of a person under the law; (2) whether the reasonable protection of the rights and property of those advised requires that the person giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen; and (3) whether the service is provided as a course of conduct. 140 So.2d at 591. If this test is met, the conduct constitutes the practice of law.

. Although beyond the scope of the Standing Committee in issuing this opinion, the Committee states that nothing contained herein should be read to allow an attorney to use a nonlawyer agent to solicit or advertise in a way that the *438 attorney could not. Rule 4-8.4(a), Rules Regulating The Florida Bar.

. Although beyond the scope of the role of the Standing Committee, the Committee points out that, in addition to an unlicensed practice of law problem, there is a potential conflict of interest should the attorney-employee attempt to perform legal services on behalf of the customers of his employer. Rules 4-1.7, 4-1.8, Rules Regulating The Florida Bar. See also, Florida Ethics Opinions 64-33, 67-11 and 72-21.

. Nothing in this opinion should be read as preventing the attorney from seeking the servic *441 es of a nonlawyer to assist the attorney in drafting the plan documents.