# Supreme Court of Florida

_____

No. SC14-211
_____

**THE FLORIDA BAR RE: ADVISORY OPINION—
MEDICAID PLANNING ACTIVITIES BY NONLAWYERS.**

[January 15, 2015]

PER CURIAM.

Pursuant to Rule Regulating the Florida Bar 10-9.1, the Florida Bar Elder Law Section's Unlicensed Practice of Law Subcommittee petitioned the Florida Bar's Standing Committee on the Unlicensed Practice of Law (Standing Committee) for an advisory opinion on whether it constitutes the unlicensed practice of law for a nonlawyer to engage in the following Medicaid planning activities leading up to the Medicaid application: (1) drafting of personal service contracts; (2) preparation and execution of qualified income trusts; or (3) rendering legal advice regarding the implementation of Florida law to obtain Medicaid benefits. As required under rule 10-9.1(f), the Standing Committee provided notice of and held a public hearing to address these issues where it considered written and live testimony. The Standing Committee subsequently filed a

proposed advisory opinion in this Court. We have jurisdiction to review the proposed advisory opinion pursuant to rule 10-9.1(g) of the Rules Regulating the Florida Bar and article V, section 15 of the Florida Constitution.

After the proposed advisory opinion was filed, interested parties were permitted to file briefs in support of or in opposition to the proposed advisory opinion. After considering the proposed opinion and the briefs of the interested parties, the Court directed the Standing Committee to file a revised proposed advisory opinion with certain clarifications regarding the activities of nonlawyer staff of the Florida Department of Children and Families in relation to their duty to assist the public in the Medicaid application process. The revised proposed advisory opinion is hereby approved and is set forth in the appendix to this opinion.[1] As provided in Rule Regulating the Florida Bar 10-9.1(g)(4), the advisory opinion shall have the force and effect of an order of this Court and shall be published accordingly.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

---

1. References to the transcript of the live testimony heard by the Standing Committee at the public hearing and to written testimony and other materials considered by the Standing Committee have been deleted. Other minor editorial changes have also been made.

Original Proceeding – The Florida Bar Re: Advisory Opinion – Medicaid Planning Activities by Nonlawyers

C.C. Abbott, Chair, Standing Committee on the Unlicensed Practice of Law, Tallahassee, Florida; Carsandra Denyce Buie, Past Chair, Standing Committee on the Unlicensed Practice of Law, Tallahassee, Florida; Lori S. Holcomb, and Jeffrey Todd Picker, The Florida Bar, Tallahassee, Florida, on behalf of the Standing Committee on the Unlicensed Practice of Law; Jana McConnaughhay, Chair, Elder Law Section of The Florida Bar, Tallahassee, Florida; John Sanders Clardy, III, Past Chair, Elder Law Section of the Florida Bar, Clardy Law Firm, P.A., Crystal River, Florida; and Robert M. Sondak of Cohen, Chase, Hoffman & Schimmel, P.A., Miami, Florida, on behalf of the Elder Law Section of The Florida Bar;

      for Petitioner

Cindy Leann Huddleston and Anne Lisa Swerlick, Tallahassee, Florida, on behalf of Florida Legal Services, Inc., and Valory Toni Greenfield, Miami, Florida, on behalf of Florida Legal Services, Inc.; Anthony L. Turbeville, Lakeland, Florida, pro se; and Stephen Michael Masterson, Tallahassee, Florida, on behalf of William D. Burns,

      Responding with comments

**APPENDIX**


THE FLORIDA BAR
STANDING COMMITTEE ON THE
UNLICENSED PRACTICE OF LAW


FAO #2011-4, MEDICAID PLANNING ACTIVITIES BY NONLAWYERS

_____/


<u>REVISED PROPOSED ADVISORY OPINION</u>




October 14, 2014

<u>INTRODUCTION</u>

Pursuant to rule 10-9 of the Rules Regulating The Florida Bar, The Florida Bar's Elder Law Section UPL Subcommittee petitioned the Standing Committee on Unlicensed Practice of Law (Standing Committee) for an advisory opinion on certain activities of nonlawyer Medicaid planners.

The petitioner requested an advisory opinion on whether it constitutes the unlicensed practice of law for a nonlawyer to engage in the following Medicaid planning activities leading up to the Medicaid application: (1) drafting of personal service contracts; (2) preparation and execution of qualified income trusts; or (3) rendering legal advice regarding the implementation of Florida law to obtain Medicaid benefits. The preparation of the application for Medicaid benefits was not considered as federal law authorizes nonlawyer assistance in the application process.[1]

Pursuant to Rule 10-9.1(f) of the Rules Regulating The Florida Bar, public notice of the hearing was provided on The Florida Bar's website, in <u>The Florida Bar News</u>, and in the <u>Tampa Bay Times</u>. The Standing Committee held a public hearing on February 22, 2013.

Testifying on behalf of the petitioner was Twyla Sketchley, Chair of the Elder Law Section of The Florida Bar, and John Frazier, Chair of the Unlicensed

---

1. 42 C.F.R. § 435.908.

Practice of Law Subcommittee of the Elder Law Section of The Florida Bar. In addition to the petitioner, the Standing Committee received testimony from Carolyn Norton; Peggy Crabbe; Jack Rosenkranz, an attorney; Emma Hemness, an attorney; Gerald Hemness, an attorney; Amy O'Rourke; Jeff Brown, an attorney; and Sonja Kobrin.

In addition to the testimony presented at the hearing, the Standing Committee received written testimony which has been filed with this Court. Most of the testimony was from attorneys practicing in the area of elder law and Medicaid planning, and, by and large, reflected the opinion that a formal advisory opinion is needed to protect the public.

## DISCUSSION

In June 2008, the Standing Committee considered a request for direction regarding the activities of nonlawyer Medicaid planners as a result of UPL complaints being investigated by The Florida Bar. The Standing Committee voted to provide the following direction:

> The following activities of nonlawyer Medicaid planners would constitute the unlicensed practice of law: establishing irrevocable trusts, establishing qualified income trusts, and hiring an attorney to review, prepare, or modify documents for customers if payment to the attorney was through the company. The committee voted that the following activities would have to be determined on a case-by-case basis: restructuring assets, counseling customers on the best way to get Medicaid approval, and advertising as an "elder counselor." The committee

voted that the hiring of an attorney to review, prepare, or modify documents for customers if there was a direct relationship with the attorney and payment was made directly to the attorney would not be the unlicensed practice of law.

This direction was also provided to the Elder Law Section in May 2009. So while the issue of nonlawyer Medicaid planning came before the Standing Committee previously, this is the first request for a formal advisory opinion.

The issue of the activities of the Florida Department of Children and Families (DCF) staff was not part of the earlier direction provided by the Standing Committee or the request for a formal advisory opinion or this opinion. Nonlawyer DCF staff are government employees responsible for assisting in the application process. DCF staff have an affirmative duty to tell a Medicaid applicant about Medicaid trusts and other eligibility laws and policies governing the structuring of income and assets when relevant to the applicant's facts and financial situation. When performed by DCF staff, these activities are not the unlicensed practice of law. They will allow each applicant, and the applicant's attorney, the ability to choose the course of action for qualifying for assistance that best suits the applicant.

Each Medicaid planning activity posed by the petitioner will be addressed individually.

<u>Drafting of Personal Service Contracts</u>

A personal service contract is one of the strategies used by Medicaid applicants to spend down assets so that their countable assets are within the allowable asset limit provided by law for Medicaid eligibility. It is a contract for personal care services between the Medicaid applicant and a caregiver, often an adult child, for services that are not provided by the nursing home or assisted living facility. As one witness noted, Florida law only requires nursing homes to give a little over two hours of care per day per resident, which leaves almost twenty-two hours of the day that the resident is not getting personal hands-on care. The personal service contract provides for care during that other time.

There are both legal and tax ramifications if a personal service contract is not done properly. One witness testified that one of his clients had a nonlawyer service draft a personal service contract that was rejected by Medicaid, which resulted in the client not receiving Medicaid benefits for several months, costing the client thousands of dollars. Another witness testified about a client who engaged a nonlawyer Medicaid planning service and was advised by the service that a personal service contract was needed and the contract that was prepared called for her son, who lived 12 hours away by car and visited her 2-3 times per year, to provide 26-27 hours of care per week. The family is open to charges for Medicaid fraud and the client is no longer eligible for Medicaid benefits.

The payment for services under a personal service contract is based on the resident's life expectancy and is made to the caregiver in a lump sum payment up front. The payment for services under a personal service contract is treated by the Internal Revenue Service as a taxable event for the caregiver. Without proper advice and planning, this may result in a huge tax liability. The Standing Committee received testimony about nonlawyer Medicaid planners not properly advising of this potential tax liability. This testimony demonstrates that the improper drafting of a personal service contract and improper tax advice and planning causes public harm.

The preparation of a contract is the practice of law. In The Florida Bar v. Sperry, 140 So. 2d 587, 597 (Fla. 1962), vacated on other grounds, 373 U.S. 379 (1963), the Court held that "the practice of law also includes the giving of legal advice and counsel to others as to their rights and obligations under the law and the preparation of legal instruments, including contracts, by which legal rights are either obtained, secured or given away, although such matters may not then or ever be the subject of proceedings in a court." A personal service contract is a contract which imposes duties and obligations on both parties to the contract. The caregiver agrees to provide a certain amount of care and specified services per week in exchange for payment for that care and services. When a nonlawyer Medicaid planner drafts a personal service contract the nonlawyer is practicing

law.  It is the opinion of the Standing Committee that a nonlawyer's drafting of a personal service contract constitutes the unlicensed practice of law.

<u>Preparation and Execution of Qualified Income Trusts</u>

If a Medicaid applicant's gross monthly income exceeds a certain amount, a properly drafted Qualified Income Trust must be established and a Qualified Income Trust checking account must be opened at a bank in order for the applicant to qualify for Medicaid.  The income trust checking account must be funded each month with the income that exceeds the acceptable limit in order for the recipient to obtain Medicaid benefits.  If a Qualified Income Trust is not properly established or properly funded each month, then the Medicaid applicant will not be eligible for Medicaid.

The Standing Committee received testimony about a nonlawyer improperly preparing a Qualified Income Trust resulting in Medicaid benefits being denied, which cost the client several months at the nursing home.  In another case, a nonlawyer incorrectly advised the client regarding the funding of a Qualified Income Trust, resulting in the client being denied Medicaid benefits.  The client had a $7,000 bill from the nursing home that she was unable to pay.  In other testimony, a nonlawyer improperly executed an irrevocable trust form to qualify the client for veterans benefits.  This strategy failed to allow the client to qualify for Medicaid benefits and caused a lengthy disqualification of Medicaid benefits.

The Court, in The Florida Bar re: Advisory Opinion–Nonlawyer Preparation of Living Trusts, 613 So. 2d 426 (Fla. 1992) (hereinafter *"Living Trust case"*), held that the assembly, drafting, execution, and funding of a living trust constitutes the practice of law, as does determining the need for a living trust and identifying the type of living trust most appropriate for the client. The same would be true for a Qualified Income Trust. A living trust is a legal document affecting an individual's important legal rights. A Qualified Income Trust is also a legal document affecting an individual's important legal rights. In order to protect those rights, the person preparing either type of trust must have a knowledge of the law greater than that possessed by the average citizen. It is therefore the opinion of the Standing Committee that a nonlawyer's determination of whether a Qualified Income Trust is necessary as well as the assembly, execution and funding of the trust constitutes the unlicensed practice of law.

While the Court held that the preparation of a trust constitutes the unlicensed practice of law, the Court also found that gathering the necessary information for the living trust does not constitute the practice of law, and nonlawyers may properly perform this activity. It is the opinion of the Standing Committee that this limited exception is not applicable here.

The holding allowing the gathering of information in the Living Trust case was based on the Court's holding in In re: The Joint Petition of The Florida Bar

and Raymond, James and Associates, Inc., 215 So. 2d 613 (Fla. 1968). Raymond, James dealt with the activities of securities brokers, a regulated industry. The parties entered into a stipulation, approved by the Court, which set forth activities that constituted the unlicensed practice of law and activities that were authorized. In the context of the case, the Court held that "Raymond, James and Associates, Inc., its officers, agents and employees properly may . . . [s]olicit specific facts about customers' or prospective customers' assets." Id. at 614. The holding did not allow for the gathering of any information, it allowed for the gathering of facts about a customer's assets, an activity a licensed securities broker would need to be able to perform to conduct the business of selling securities.

Similarly, in the Living Trust case, many of the nonlawyers involved in the sale of a living trust were licensed life insurance agents. The life insurance agents sought to " 'preserve permissible existing rights (and duties) for qualified, regulated, non-lawyer insurance agents to participate in their proper roles in the creating of a living trust.' " Living Trust, 613 So. 2d at 428. The Court held that the opinion was "consistent with the 'existing rights' of life insurance agents. Life insurance agents may properly sell life insurance that will fund a living trust and may offer advice on funding the trust from a financial standpoint." Id. Clearly, a life insurance agent would have to be able to gather facts about a person's assets to perform these activities.

- 12 -

When read in context, it is the opinion of the Standing Committee that the information a nonlawyer may gather is limited to information about the customer's assets when such information is necessary for the nonlawyer to conduct a business for which they are licensed and regulated. Support for this can be found in the Court's holding in The Florida Bar v. American Senior Citizens Alliance, Inc., 689 So. 2d 255 (Fla. 1997). The nonlawyers in American Senior Citizens Alliance were in the business of selling living trusts. They used high pressure sales tactics and targeted the elderly. They also used the Court's holding regarding gathering information in the Living Trust case to justify their activities. The Court disagreed and found the reliance on that language "an unreasonable interpretation of the phrase 'gathering the necessary information.' " Id. at 259.

Allowing nonlawyer Medicaid planners to gather information for the preparation of a Qualified Income Trust would also be an unreasonable interpretation of the phrase. The testimony revealed that nonlawyer Medicaid planners are essentially unregulated, as there are no licensing, education, or advertising requirements. Unlike the securities brokers in Raymond, James and Associates, Inc. or the life insurance agents in the Living Trust case, if the

nonlawyer cannot prepare the Qualified Income Trust, there is no legitimate reason

for the nonlawyer to gather information about the customer's assets.[2]

Consequently, it is the opinion of the Standing Committee that a

nonlawyer's preparation, execution, funding of, and determination of the need for a

Qualified Income Trust constitutes the unlicensed practice of law. This includes

the gathering of information for the Qualified Income Trust.

### Rendering Legal Advice Regarding the Implementation of Florida Law to Obtain Medicaid Benefits

Medicaid eligibility, as part of Medicaid planning, involves a highly

technical set of federal and state statutes and regulations, which in Florida is well

over 3,000 pages. Medicaid planning involves: (1) the assessment of all facts

relevant to a client's situation, including personal, financial, familial, and

---

2. The preparation of the Medicaid application is not the unlicensed practice of law as it is authorized by federal law. Therefore, the preparation of the application was not part of the question presented to the Standing Committee. To the extent that it is necessary for a nonlawyer to gather information about an individual's assets to complete the application, that activity would also be authorized. In addition, to the extent a federal or state statute or regulation allows a government employee to assist in the application process, the conduct is authorized and not the unlicensed practice of law. As noted earlier, nonlawyer DCF staff are government employees responsible for assisting in the application process. DCF staff has an affirmative duty to tell a Medicaid applicant about Medicaid trusts and other eligibility laws and policies governing the structuring of income and assets when relevant to the applicant's facts and financial situation. When performed by DCF staff, these activities are not the unlicensed practice of law. They will allow each applicant, and the applicant's attorney, the ability to choose the course of action for qualifying for assistance that best suits the applicant.

historical; (2) application of those particular facts to the laws governing Medicaid; (3) developing a plan to structure or spend those assets in compliance with those laws or planning to reverse actions already taken to correct potentially unauthorized activity to minimize negative legal consequences; (4) drafting legal documents to execute the plan; and (5) assisting the client in correctly executing a particular plan.

Medicaid planning includes making sure the applicant will meet the asset and income test for Medicaid eligibility. An unmarried Medicaid applicant can own no more than $2,000 in "countable" assets. Typical countable assets include bank accounts, stocks, bonds, annuities, and some types of life insurance. The two primary non-countable assets are the homestead and one automobile. For married applicants, if both spouses are applying for Medicaid, there is a $3,000 asset limit. If only one spouse is applying for Medicaid, the nursing home resident may only have $2,000 in assets, and the community spouse can have up to $113,640 in countable assets. Federal and Florida law allow certain options to ensure that the spouse of the Medicaid applicant is not impoverished in attempting to obtain Medicaid benefits for an ill spouse. Some of the strategies used to spend down assets include: (1) the use of a personal service contract; (2) the use of a special needs irrevocable pooled trust; (3) the use of a Medicaid qualifying annuity; (4) the purchase of income producing property; (5) the purchase of a homestead; (6)

gifting; (7) the purchase of other exempt assets; (8) repairs to the homestead; (9) payment of debts and expenses; (10) the purchase of an irrevocable funeral service or cremation contract; (11) a burial savings account; and (12) the purchase of an automobile.

Proper Medicaid planning involves providing advice on the purchase and titling of exempt assets and the transfer of countable assets in excess of $2,000 to the community spouse. Legal strategies to protect excess assets of the community spouse include: (1) assignment of rights to support (spousal refusal); (2) the use of a promissory note; and (3) a Medicaid qualifying annuity.

The Court, in Sperry, developed the following test to determine whether an activity constitutes the practice of law:

> [I]n determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of [the] advice and performance of [the] services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.

Sperry, 140 So. 2d at 591.

Assessing the facts relevant to a client's situation, applying those facts to the laws governing Medicaid, developing a plan to structure or spend the client's assets in compliance with those laws, and drafting legal documents to execute the plan, would constitute the practice of law under the Sperry test. It is the opinion of the Standing Committee that when a nonlawyer engages in these activities or renders legal advice regarding the implementation of Florida law to obtain Medicaid benefits the nonlawyer is engaged in the unlicensed practice of law. This includes advising an individual on which legal strategy or strategies under federal or Florida law are appropriate given the individual's factual circumstances.

### ATTORNEY INVOLVEMENT

Some nonlawyer Medicaid planning companies claim to have relationships with lawyers who draft the legal documents for the company's clients. Testimony indicated that this sometimes occurred with the client never meeting with or speaking to the attorney or only briefly speaking to the attorney. Other companies advertise that they use a team of professionals, including an attorney, to assist the client. Having a lawyer draft legal documents for the company's clients would still be an unlicensed practice of law problem for the company under Nonlawyer Preparation of Living Trusts, and American Senior Citizens Alliance. It is the opinion of the Standing Committee that unless the client establishes an independent attorney-client relationship with the attorney, payment from the client

is directly to the attorney, and the initial determination that the particular legal document or Medicaid planning strategy is appropriate for the client given the client's particular factual circumstances is the determination of the attorney, then the company would be engaged in the unlicensed practice of law.

THE FLORIDA BAR V. BRUMBAUGH

Two of the activities presented to the Standing Committee involve the preparation of documents – the personal service contract and the Qualified Income Trust. When discussing the preparation of documents, the Court often looks to The Florida Bar v. Brumbaugh, 355 So. 2d 1186 (Fla. 1978). For the following reasons the Standing Committee is of the opinion that Brumbaugh should not be used as justification to allow the sale of a personal service contract kit or Qualified Income Trust kit in Medicaid eligibility matters.

Marilyn Brumbaugh operated a secretarial service where she offered to do typing services for various do-it-yourself legal matters. She also sold legal forms and kits. Following the holdings of other states, the Court held that a nonlawyer may sell legal kits and general information containing forms and may complete the forms with information provided by the individual in writing. In so holding, the Court noted that

> Although there is a danger that some published material
> might give false or misleading information, . . . [w]e
> must assume that our citizens will generally use such
> publications for what they are worth in the preparation of

- 18 -

their cases, and further assume that most persons will not rely on these materials in the same way they would rely on the advice of an attorney or other persons holding themselves out as having expertise in the area. The tendency of persons seeking legal assistance to place their trust in the individual purporting to have expertise in the area necessitates this Court's regulation of such attorney-client relationships. . . .

Id. at 1193.

Although Brumbaugh found that nonlawyers could sell forms and kits and complete them with information provided in writing by the customer, the facts showed that Ms. Brumbaugh went beyond the mere typing of the forms. As found by the Court, her customers relied on her to properly prepare the necessary forms, she advised clients as to various remedies available to them or otherwise assisted them in preparing the necessary forms, she inquired into or answered questions of her clients to determine which forms would be necessary and advised how to best fill out the forms. Because she placed herself in a position of reliance and gave her customers advice, the Court held that Ms. Brumbaugh was engaged in the unlicensed practice of law.

Brumbaugh was decided in 1978, a time when the legal information in question was disseminated in print, not on the internet. While the Court could assume "that our citizens will generally use such publications for what they are worth . . . and further assume that most persons will not rely on these materials . . .," the same cannot be said to be true now. Id. Included in the written testimony

- 19 -

are website screen shots from various nonlawyer Medicaid planning companies. Some companies indicated that attorneys are not necessary for Medicaid planning, while others hold themselves out as Medicaid "experts" or "specialists" at the same time they state how complex and tricky the Medicaid rules and regulations are.[3] The nonlawyer companies are placing themselves in a position where the customer will not only rely on their information and expertise, but will also trust that the information and services they are receiving are true and correct. Clearly, the nonlawyers are putting themselves in a position of reliance and the consuming public has no reason to believe otherwise.

The use of the internet, the complexity of Medicaid planning and the harm that can result from nonlawyers giving improper advice, more fully discussed below, leads the Standing Committee to the conclusion that the use of legal kits and forms should not be allowed in this area. Although allowed since 1978, whether an activity is the unlicensed practice of law must be viewed in light of the circumstances of each case. "[A]ny attempt to formulate a lasting, all

---

3. The Court has held that it constitutes the unlicensed practice of law for a nonlawyer to advertise that his or her company specializes in legal areas as this implies expertise in the legal field. The Florida Bar v. Davide, 702 So. 2d 184 (Fla. 1997). Consequently, it is the opinion of the Standing Committee that to the extent that a nonlawyer advertises that he or she is a Medicaid expert or specialist or in such fashion as to induce reliance on the nonlawyer to assist the individual with their Medicaid planning, the nonlawyer is engaged in the unlicensed practice of law.

encompassing definition of 'practice of law' is doomed to failure 'for the reason that under our system of jurisprudence such practice must necessarily change with the everchanging business and social order.' " Id. at 1191-92 (citations omitted). The changes that have taken place since 1978, especially the use of the internet, necessitate a change under the circumstances present here.

HARM AND THE POTENTIAL FOR HARM

As noted earlier, the testimony revealed that nonlawyer Medicaid planners are essentially unregulated, as there are no licensing, education, or advertising requirements. Because of this lack of regulation, nonlawyer Medicaid planners include a disbarred Florida lawyer, an individual who lost his securities license for fraudulent practice, and a life insurance agent who was convicted of two felonies and lost his insurance license.

Testimony described the type of harm caused by nonlawyer Medicaid planners which includes denial of Medicaid eligibility, exploitation, catastrophic or severe tax liability, and the purchase of inappropriate financial products threatening or destroying clients' life savings. The potential for public harm is even greater when the nonlawyers put themselves in a position of reliance and advising the customer as to the proper course of action to take. In order to protect the public from harm, it is the opinion of the Standing Committee that the activities

described herein constitute the unlicensed practice of law and should not be authorized.

## CONCLUSION

It is the opinion of the Standing Committee that it constitutes the unlicensed practice of law for a nonlawyer to draft a personal service contract and to determine the need for, prepare, and execute a Qualified Income Trust including gathering the information necessary to complete the trust. Moreover, a nonlawyer should not be authorized to sell personal service or Qualified Income Trust forms or kits in the area of Medicaid planning.

It is also the opinion of the Standing Committee that it constitutes the unlicensed practice of law for a nonlawyer to render legal advice regarding the implementation of Florida law to obtain Medicaid benefits. This includes advising an individual on the appropriate legal strategies available for spending down and restructuring assets and the need for a personal service contract or Qualified Income Trust.

It is the position of the Standing Committee that a nonlawyer's preparation of the Medicaid application itself would not constitute the unlicensed practice of law as it is authorized by federal law. As noted earlier, it is also not the unlicensed practice of law for DCF staff to tell Medicaid applicants about Medicaid trusts and other eligibility laws and policies governing the structuring of income and assets

when relevant to the applicant's facts and financial situation. This proposed advisory opinion is the Standing Committee on Unlicensed Practice of Law's interpretation of the law.

Respectfully Submitted,

/s/ C.C. Abbott by Jeffrey T. Picker
C.C. Abbott, Chair
Standing Committee on
Unlicensed Practice of Law
The Florida Bar
651 E. Jefferson Street
Tallahassee, FL 32399-2300
(850) 561-5840
Fla. Bar No. 467065
Primary Email: upl@flabar.org

/s/ Jeffrey T. Picker
Jeffrey T. Picker
Fla. Bar No. 12793
/s/ Lori S. Holcomb
Lori S. Holcomb
Fla. Bar No. 501018
The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300
(850) 561-5840
Primary Email: jpicker@flabar.org
Secondary Email: upl@flabar.org